# Exhibit

# H



PUBLIC MATTER
FILED

JUN 2 5 2009

STATE BAR COURT CLERK'S OFFICE
SAN FRANCISCO

# STATE BAR COURT OF CALIFORNIA

# HEARING DEPARTMENT – SAN FRANCISCO

| | |
|---|---|
| In the Matter of | Case No.: 04-O-15890-PEM; 06-J-13032 (Cons.) |
| THOMAS EDWARD FRANKOVICH | |
| Member No. 74414 | DECISION |
| A Member of the State Bar. | |

## I. Introduction

The aggressive pursuit of litigation involving violations of the Americans with Disabilities Act (ADA) has become a highly contested area of law. Attorneys, such as respondent Thomas Edward Frankovich, who seek out and profit from violations of the ADA are at the center of this controversy. Some see these attorneys as champions of the disabled, while others view them as unscrupulous pariahs. The flames of this controversy have spread beyond the realm of public opinion and into the federal court system.

In this contested matter, respondent is alleged to have committed multiple acts of misconduct involving his federal ADA practice. Said misconduct includes scheming to extort settlements, seeking to mislead a judge, and committing acts of moral turpitude. Respondent is also charged with an unrelated allegation that he committed misconduct in a foreign jurisdiction by improperly communicating with a represented party. Based on the evidence presented at trial,

the court finds respondent culpable of only the latter charge and orders, among other things, that he receive a public reproval.

## II. Pertinent Procedural History

The Office of the Chief Trial Counsel of the State Bar of California (State Bar) initiated this proceeding by filing two Notices of Disciplinary Charges on February 4, 2008.[1] On February 25, 2008, respondent filed a response to Case No. 04-O-15890 and on April 18, 2008, he filed a response to Case No. 06-J-13032.

A seven-day trial was held in December 2008 and January 2009. The State Bar was represented in this proceeding by Deputy Trial Counsel Erica Dennings. Respondent appeared at trial in propria persona. On April 7, 2009, following receipt of closing briefs, the court took this matter under submission.

## III. Findings of Fact and Conclusions of Law

### A. Jurisdiction

Respondent was admitted to the practice of law in California on June 28, 1977, and has since been a member of the State Bar of California.

### B. Credibility Determinations

With respect to the credibility of the witnesses, the court has carefully weighed and considered their demeanor while testifying; the manner in which they testified; their personal interest or lack thereof in the outcome of this proceeding; and their capacity to accurately perceive, recollect, and communicate the matters on which they testified. (See, e.g., Evid. Code section 780 [lists of factors to consider in determining credibility].) Except as otherwise noted, the court finds the testimony of the witnesses to be credible.

---

[1] These matters were subsequently consolidated.

## C. Respondent's ADA Practice - Case No. 04-O-15890

### I. Findings of Fact

#### Background

The ADA, 42 U.S.C. §12101 et seq., was signed into law in 1990. Its stated goal is to remedy discrimination against individuals with disabilities. A major source of discrimination suffered by disabled individuals is the inability to gain access to public accommodations. Title III of the ADA, 42 U.S.C. §12181 et seq., requires the removal of structural barriers in existing public accommodations "where such removal is readily achievable." Where removal of the barrier is not readily achievable, the facility must provide access through alternative methods if such methods are readily achievable. (U.S.C. §12182(b)(2)(A)(v).)

To enforce Title III, the ADA contains both a private right of action, 42 U.S.C. §12188(a), and a right of action for the Attorney General, 42 U.S.C. §12188(b). While the Attorney General may seek monetary damages on behalf of an aggrieved party, the only remedies available under the private right of action are injunctive relief and the recovery of attorneys' fees and costs. (42 U.S.C. §12188(a)(1); 42 U.S.C. §2000a-3(a).)

On the other hand, California's state civil rights law amplifies the available scope of relief by permitting the recovery of money damages. Because violations of the ADA also constitute a violation of California's Unruh Civil Rights Act (Cal. Civ. Code §51(f)) and the California Disabled Persons Act (Cal. Civ. Code §54(c)) plaintiffs can sue in federal court for injunctive relief under the ADA, and tack on state law claims for money damages under the Unruh Act and the California Disabled Persons Act.

In 2004, respondent filed at least 223 lawsuits in the United States District Courts for the Northern and Central Districts of California alleging violations of the ADA. Of those lawsuits,

*I*

156 were filed on behalf of Jarek Molski,[2] and 40 were filed on behalf of either Les Jankey[3] or Patrick Connally.[4] Disability Rights Enforcement Education Services (DREES) was a co-plaintiff in all of the lawsuits.

## *Molski Found to be a Vexatious Litigant in the Central District Court of California*

In or about 2004, respondent filed an ADA action on behalf of Mr. Molski entitled *Molski v. Evergreen Dynasty Corporation d/b/a Mandarin Touch Restaurant, et al.,* United States District Court, Central District of California, Case No. CV 04-0450 ER. Defendant Evergreen Dynasty, doing business as Mandarin Touch Restaurant, sought an order declaring Mr. Molski a vexatious litigant and requiring him to obtain leave of court before filing additional ADA suits. On November 15, 2004, District Court Judge Edward Rafeedie presided over a hearing on this issue.

In determining that Mr. Molski was a vexatious litigant, Judge Rafeedie applied five factors set forth in *Safir v. United States Lines, Inc,* 792 F.2d 19, 24 (2d Cir. 1986). These factors include: (1) the litigant's history of litigation, in particular whether it entailed vexatious, harassing or duplicative suits; (2) the litigant's motive in pursuing the litigation, for example, whether the litigant had a good faith expectation of prevailing; (3) whether the litigant was represented by counsel; (4) whether the litigant caused unnecessary expense to the parties or placed needless burden on the courts; and (5) whether other sanctions would be adequate to protect the courts and other parties.

Judge Rafeedie found that Mr. Molski had filed approximately 400 lawsuits alleging violations of ADA in the federal courts since 1998. Many of these were nearly identical in terms of the facts alleged, the claims presented, and the damages requested. Judge Rafeedie found it very unlikely that Mr. Molski suffered the same injuries, often multiple times in one day.

---

[2] Mr. Molski resides in Woodland Hills, California, and is an individual who is paralyzed from the chest down and uses a wheelchair for mobility.

[3] Mr. Jankey is an individual who relies on a wheelchair for mobility.

[4] Mr. Connally is a disabled individual and president of Disability Rights Enforcement Education Services.

Judge Rafeedie further found that Mr. Molski's primary motivation for filing ADA lawsuits was to extract a cash settlement. This finding was based on the fact that Mr. Molski always raised additional state law claims that allow for the recovery of money damages. Moreover, Judge Rafeedie concluded that because an overwhelming majority of the cases settle, with a significant minority dismissed for a violation of a court order or failure to prosecute the claim, it calls into question Mr. Molski's good faith expectation of prevailing on the merits of his claim, and suggests that he does not have a reasonable expectation (or intention) of litigating the suit on the merits.

Additionally, the Judge Rafeedie determined that since Mr. Molski was represented by counsel in every lawsuit the court was aware of, Moslki was not entitled to the protection generally accorded *pro se* litigants. The court further reasoned that since Mr. Molski filed countless numbers of vexatious claims, he caused needless expense to other parties and obviously burdened the courts.

Therefore, on December 9, 2004, Judge Rafeedie issued an order declaring Mr. Molski a vexatious litigant and ordering him to obtain leave of court before filing any other lawsuits alleging violations of the ADA in the United States District Court for the Central District of California.

### Molski Aided by Respondent

In his December 9, 2004 order, Judge Rafeedie noted that Mr. Molski had not acted alone. Judge Rafeedie acknowledged that Mr. Molski was aided and abetted by his attorneys, often respondent's law offices, and his corporate co-plaintiff DREES. For that reason, Judge Rafeedie issued an order to show cause against respondent's law office to show why they should not be required to obtain leave of court to file any future lawsuits alleging violations of the ADA.

On March 8, 2005, Judge Rafeedie issued a memorandum decision ordering respondent to obtain leave of court before filing any new complaints alleging violations of Title III of the ADA in the United States District Court for the Central District of California. This decision was based on the following factual findings: (1) respondent's law firm filed at least 223 lawsuits in the Northern and Central

Districts of California in 2004, one-third of which were against ethnic restaurants; (2) because of the similarity and multitude of Mr. Molski's injuries, many of his claimed physical injuries were contrived; (3) the only reason respondent made a claim for physical injury in every complaint was to invoke the personal injury provisions of defendant's insurance policy; and (4) respondent's law firm had aggressively and unethically pursued and obtained a high rate of cash settlements - indicative of an extortion scheme.

The basis for Judge Rafeedie's finding that respondent unethically pursued cash settlements was the letter respondent sent defendants with each complaint. Judge Rafeedie found that this letter violated the Model Code of Professional Responsibility in that it: (1) advised an unrepresented party against obtaining counsel; (2) provided a considerable amount of legal advice on pursuing a claim against the defendant's insurance company; and (3) advised the unrepresented party that it does not have "a bona fide defense" to the lawsuit and recommended a quick settlement, rather than wasting money on "needless litigation." Judge Rafeedie further concluded that the only reason respondent waited a year before filing suit was to intimidate small businesses by increasing the statutory damages claim.

### Molski Found not to be a Vexatious Litigant in the Northern District Court of California

Once Judge Rafeedie declared Mr. Molski a vexatious litigant in the Central District Court of California, defendants in *Jarek Molski et al v. Rapazzini Winery*, brought a motion to declare Mr. Molski a vexatious litigant in the Northern District Court of California. However, on April 6, 2005, the Honorable Patricia V. Trumbull declined to follow Judge Rafeedie's ruling.

After examining the contents of Mr. Molski's pleadings, Judge Trumbull found that his ADA claims were not frivolous, and that Mr. Molski provided reasonable explanations for the number of violations he discovers and for the number of injuries he suffers. Judge Trumbull disagreed with Judge Rafeedie's conclusion that Mr. Molski's high settlement rate and failure to take cases through trial evidenced lack of a good faith expectation of prevailing on the merits. Judge Trumbull instead

-6-

concluded that a high settlement rate is merely a fact of modern litigation. Judge Trumbull further concluded that Mr. Molski did not cause needless expense to the federal court system because he has a right to seek redress in federal court, even though he also seeks remedies under pendant state claims that are not available under federal law.

## Respondent's Appeal of the Central District Court's Findings

Respondent appealed and the Ninth Circuit Court of Appeal reviewed Judge Rafeedie's orders for abuse of discretion.[5] On August 31, 2007, the Ninth Circuit Court of Appeal issued an opinion affirming Judge Rafeedie's orders declaring Mr. Molski a vexatious litigant and requiring that he and respondent obtain leave of court prior to filing any new ADA complaints.

After the Ninth Circuit affirmed Judge Rafeedie's orders, respondent filed a petition for rehearing. The panel denied the petition for rehearing, but not without vigorous dissent. In his dissenting opinion, Chief Judge Alex Kozinski argued that Judge Rafeedie had no basis to find that Mr. Molski made meritless claims or lied about his injuries. In his scathing assessment of Judge Rafeedie's "hearing," Judge Kozinski wrote:

Oh, sure, the docket indicates (somewhat misleadingly) that a "hearing" was held on the vexatious litigant motion, but it plainly was not an evidentiary hearing. What happened instead is this: The judge spent the first half of the hearing berating Molski and his lawyers, in pretty much the same terms as his subsequent order-which suggests that his views were cast in cement by the time of the "hearing." [Citations.] After the judge was done, Molski's counsel was allowed to address the court, [Citation], but no witnesses testified, no evidence was presented, there was no cross-examination and there were no evidentiary rulings-in short, there was no trial. Molski, whose veracity the district court impugned, was not even present.

How then did the judge manage to make factual findings, and how does this panel affirm those findings on appeal? It's bad enough that the panel relies on its own armchair wisdom about plaintiff's supposed ability to avoid repetitive injuries, [Citation], rather than looking to whether the record supports the findings of the district court. Worse still is that there is no record the panel could consult if

---

[5] Abuse of discretion can be found when a district court bases its decision on an incorrect view of the law or a clearly erroneous finding of fact. (*United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir.2002); *Does I-5 v. Chandler*, 83 F.3d 1150, 1152 (9th Cir.1996).)

it were of a mind to do so. There is no statement at all from Molski himself, as the complaint is not verified. The panel does not find the absence of an evidentiary record remarkable, perhaps laboring under the mistaken impression that there must be an evidentiary record somewhere under all that paper. Still and all, those of us unfamiliar with the alchemy of making findings based on no evidence-and affirming them based on no record-would dearly love to know why the absence of an evidentiary record is not an insuperable obstacle to affirming a district court's factual finding.

The bottom line is this: The district court made, and the panel affirms, a finding that Molski is a liar and a bit of a thief, without any evidence at all. The district court and the panel also manage to find that plaintiff just couldn't have suffered the injuries he alleges, without the benefit of an expert or any other proof. But does the district court have authority to make findings that severely curtail access to the federal court, not only for plaintiff but also for his lawyers and their other clients (present and future), without swearing in a single witness? Without giving notice and an opportunity to present evidence? Without cross-examination? Without any of the other rudiments of due process? Isn't Molski at least entitled to get on the stand, look the judge in the eye and tell his story?

## 2. Conclusions of Law

### Count One: Moral Turpitude –Scheme to Extort (Bus. & Prof. Code § 6106)[6]

Moral turpitude has been defined as "an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen, or to society in general. . . . [Citations.] Moral turpitude has also been described as any crime and misconduct committed without excuse [citations] or as any 'dishonest or immoral' act, not necessarily a crime. [Citations.] The concept of moral turpitude depends upon the state of public morals . . . as well as on the degree of public harm produced by the act in question." (In re Higbie (1972) 6 Cal.3d 562, 569-570.)

The State Bar alleges that respondent engaged in a scheme to extort by: (1) filing claims that contained false and contrived claims of bodily injury; (2) filing numerous complaints alleging plaintiffs had been injured numerous times in a single day; (3) making misleading statements to defendants about hiring counsel, the merits of their defense, and discussing

---

[6] All references to section are to Business and Professions Code, unless otherwise indicated.

whether their insurance might cover any claims; and (4) not notifying the defendants of the claim until after significant time had passed so that a large daily damage total could accumulate.

The State Bar has the burden of proving that respondent is culpable by clear and convincing evidence. The State Bar's case, however, relies almost entirely on: (1) Judge Rafeedie's orders, (2) the Ninth Circuit Court's decision affirming Judge Rafeedie's orders, and (3) the testimony of James Link.

While Judge Rafeedie made substantive findings that respondent engaged in a scheme to extort ADA settlements, these findings were derived from a questionable evidentiary hearing that, according to Chief Judge Kosinski, was void of testimony and evidence. Based on the record before the court, it appears that Judge Rafeedie's findings were based more on assumption and innuendo than testimonial and documentary evidence. While Judge Rafeedie's findings were sufficient to meet the lower threshold of proof necessary to warrant pre-filing sanctions, they do not rise to the level of clear and convincing evidence.

Any weight the court gives to Judge Rafeedie's orders is diminished by the disparity in treatment respondent has received in the federal court system. Facing a similar motion, Judge Trumbull of the Northern District declined to follow Judge Rafeedie's lead on this issue. Further, there is no indication in the record that any other court has found respondent or his client to be a vexatious litigant. This is despite the fact that respondent has filed hundreds of ADA lawsuits in the Central and Northern Districts.

At first blush, the Ninth Circuit Court's affirmation of Judge Rafeedie's orders appears to bolster the State Bar's case. However, following closer examination, it's clear that the Ninth Circuit Court's holding demonstrates little aside from the fact that Judge Rafeedie's orders did not constitute an abuse of discretion. Based on the strenuous dissenting opinions voiced by

Chief Judge Kozinski, and others, the Ninth Circuit Court's affirmation was hardly a ringing endorsement.

The court also took into consideration the testimony of attorney James Link. Mr. Link's practice is made up of litigation and appellate work. In the last four years, he's worked on 80 cases where ADA was an issue. Of these 80 ADA cases, Mr. Link never represented a plaintiff. Mr. Link opinioned that respondent overbills, works cases longer than needed, and asks for outrageous attorney fees. The court, however, found Mr. Link to be a biased witness considering his perspective, demeanor, and extensive background in ADA defense.

Finally, the court also considered whether the letter respondent sent defendants with each complaint supports the allegation that he was engaged in a scheme to defraud. While Judge Rafeedie found that this letter violated the Model Code of Professional Responsibility, the State Bar did not allege, and the court does not find, that it violates either the Rules of Professional Conduct or the Business and Professions Code. And although respondent's letter seeks to expedite settlement, this is not necessarily indicative of a scheme to extort.

Accordingly, the court finds that the State Bar did not prove, by clear and convincing evidence, that respondent committed moral turpitude by engaging in a scheme to extort. Count One is dismissed with prejudice.

### *Count Two: Seeking to Mislead a Judge (§ 6068, Subd. (d))*

Section 6068, subdivision (d), prohibits an attorney from seeking to mislead the judge or any judicial officer by an artifice or false statement of fact or law. The State Bar alleges that by filing complaints containing allegations of bodily injury when there were no facts to support such a claim, respondent sought to mislead the judge or judicial officer by an artifice or false statement of fact or law.

-10-

The State Bar failed to establish, by clear and convincing evidence, their underlying premise that no facts supported respondent's allegations of his clients' bodily injuries. As noted above, the findings of Judge Rafeedie on this issue were conclusory and subsequently contradicted by the findings of Judge Trumbull. Consequently, Count Two is dismissed with prejudice.

## Count Three: Moral Turpitude – (§ 6106)

The State Bar alleges that respondent committed acts of moral turpitude by making settlement demands and settling with defendants without "appropriately apportioning" each defendants' responsibility for the repetitive, continuous, and cumulative trauma Mr. Molski suffered, thereby making defendants responsible for more than their share. The State Bar, however, failed to present clear and convincing evidence of the alleged misconduct. Furthermore, the State Bar did not establish under what duty respondent is required to "appropriately apportion" for each defendant's responsibility. Consequently, there is no basis in the record to support a finding of culpability in Count Three. Count Three is dismissed with prejudice.

### D. Case No. 06-J-13032

#### 1. Findings of Fact

##### Professional Misconduct in a Foreign Jurisdiction

Section 6049.1, subdivision (a) provides, in pertinent part, that a certified copy of a final order made by any court of record of any state of the United States, determining that a member of the California State Bar committed professional misconduct in that jurisdiction is conclusive evidence that the member is culpable of professional misconduct in this State. This court accepts such a determination as conclusive evidence of misconduct, even when the findings of the court of foreign jurisdiction were made under a lower evidentiary standard. (Cal. § 6049.1,

- 11 -

subd. (a); cf. *In the Matter of Freydl* (Review Dept. 2001) 4 Cal. State Bar Ct. Rptr. 349, 357 & fn. 8, 359; see also *In the Matter of Kittrell* (Review Dept. 2000) 4 Cal. State Bar Ct. Rptr. 195, 206.)

### *Specific Facts of Misconduct in Foreign Jurisdiction*

Respondent represented Les Jankey in an ADA lawsuit against Belmont Restaurant. This lawsuit was entitled *Les Jankey v. Belmont Restaurant,* United States District Court for the Central District of California, Case No. CV04-8617 MMM.

On January 3, 2005, respondent and his investigator Rick Sarantchin made a site visit to the Belmont Restaurant to view the alleged accessible restrooms that the lawyer for the restaurant had described. An employee of the restaurant directed respondent and Mr. Sarantchin to the doorway, which led to a closed-off section of the restaurant.

Respondent and Mr. Sarantchin went through the door and were confronted by a Greg Morris who identified himself as the owner. He asked them who they were and what they were doing. Respondent identified himself and explained that he was there to see accessible restrooms. Mr. Morris asked respondent if he had spoken with his lawyer, Mr. Carpenter. Respondent insinuated to Mr. Morris that Mr. Carpenter had suggested that someone in respondent's office conduct the inspection.

Mr. Morris then gave respondent and Mr. Sarantchin permission to inspect the men's and women's restrooms, which appeared to be accessible but for a few needed "easy fixes." Respondent then told Mr. Morris what the "easy fixes" consist of, including installing a lift. Mr. Morris said it would be too costly to install a lift and told respondent to take the matter up with his attorney.

Several days later, respondent's associate and lead attorney responsible for the daily litigation of the case, Ms. Julia Adams, called Mr. Carpenter to inform him that respondent had

visited the restaurant and viewed the accessible restrooms. Mr. Carpenter conveyed his surprise and disapproval of the ex parte communication with a represented party.

Ms. Adams admitted that Mr. Carpenter never authorized plaintiffs' counsel to meet with Mr. Morris. After speaking with respondent, Ms. Adams told Mr. Carpenter that respondent had been under the mistaken impression that Mr. Carpenter had approved inspection of the premise. Respondent acknowledged that he had engaged in an improper ex parte communication with Mr. Morris.

On May 24, 2005, the matter of respondent's improper ex parte communication with a represented party was referred to a standing committee on discipline for the United States District Court for the Central District of California. On April 25, 2006, the Standing Committee on Discipline's Findings, Conclusions & Recommendations was filed under seal in the Central District, U.S. District Court and referred to a three-judge panel of the district court.

The district court panel concluded that respondent violated rule 2-100(A)[7] of the California Rules of Professional Conduct.[8] Consequently, on June 20, 2006, the United States District Court for the Central District of California ordered that respondent be suspended from practicing law in the Central District for six months.[9]

2. *Conclusions of Law*

As noted ante, the Central District's disciplinary order is conclusive evidence that respondent is culpable of misconduct in this state. Respondent did not challenge the findings of

---

[7] This rule provides: "While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer."

[8] Unless otherwise provided, references to the rules are to the California State Bar Rules of Professional Conduct.

[9] The district court found respondent's violation of rule 2-100(A) to be "serious and willful," but did not further elaborate on how the duration of respondent's suspension was determined.

the district court's disciplinary order. (See Cal. § 6049.1, subd. (b)(2)-(3).) Accordingly, the court finds that the misconduct found in the Central District, i.e. respondent's violation of rule 2-100(A), clearly warrants the imposition of discipline in this state.

## IV. Mitigating and Aggravating Circumstances

### A. Mitigation

Respondent bears the burden of establishing mitigation by clear and convincing evidence. (Rules Proc. of State Bar, tit. IV, Stds. for Atty. Sanctions for Prof. Misconduct,[10] std. 1.2(e).) Here, respondent has proven multiple mitigating circumstances.

#### 1. No Prior Record of Discipline

Respondent was admitted to the practice of law in California in June 1977 and has no prior record of discipline. (Standard 1.2(e)(i).) Respondent's 27 years of discipline-free practice prior to the present misconduct is entitled to considerable weight in mitigation. (See In the Matter of Lane (Review Dept. 1994) 2 Cal. State Bar Ct. Rptr. 735, 749.)

#### 2. Spontaneous Candor and Cooperation

By admitting culpability in Case No. 06-J-13032, respondent has demonstrated spontaneous candor and cooperation with the State Bar. (Std. 1.2(e)(v).)

#### 3. Passage of Considerable Time

Approximately four and one-half years have passed since the present misconduct. (Std. 1.2(e)(viii).) Respondent's operation of a successful post-misconduct practice during this time period warrants some consideration in mitigation. (In the Matter of Riordan (Review Dept. 2007) 5 Cal. State Bar Ct. Rptr. 41, 49.)

---

[10] Future references to standard(s) or std. are to this source.

### 4. Character Evidence

Respondent presented favorable character testimony from several witnesses including Herbert Levine, Kim Blackseth, Camela Cantasani, Deborah Bogaards, Craig Yates, Robert Cartwright, and Houman Chitsaz. (Std. 1.2(e)(vi).) These witnesses testified to respondent's honesty, responsiveness, and general good character. Respondent's evidence of good character warrants some consideration in mitigation.

### B. Aggravation

It is the State Bar's burden to establish aggravating circumstances by clear and convincing evidence. (Std 1.2(b).) Based on the evidence before the court, no aggravating circumstances have been established.

## V. Discussion

In determining the appropriate discipline to recommend in this matter, the court looks at the purposes of disciplinary proceedings and sanctions. Standard 1.3 sets forth the purposes of disciplinary proceedings and sanctions as "the protection of the public, the courts and the legal profession; the maintenance of high professional standards by attorneys and the preservation of public confidence in the legal profession."

In addition, standard 1.6(b) provides that the specific discipline for the particular violation found must be balanced with any mitigating or aggravating circumstances, with due regard for the purposes of imposing disciplinary sanctions.

In this case, the standards call for the imposition of a minimum sanction ranging from reproval to suspension. (Std. 2.10.) The State Bar argues, and the court agrees, that respondent's violation of rule 2-100, standing alone, warrants a public reproval.

Earlier cases involving improper communications with a represented party have resulted in discipline ranging from public reprimand (*Abeles v. State Bar* (1973) 9 Cal.3d 603) to three

months' actual suspension (*Mitton v. State Bar* (1969) 71 Cal.2d 525; *Turner v. State Bar* (1950) 36 Cal.2d 155; *Carpenter v. State Bar* (1930) 210 Cal. 520).

Of these cases, the court finds *Abeles* to be the most similar to the present matter. In *Abeles*, the attorney was found culpable of communicating on a subject of controversy with a represented party without consent. In mitigation, the California Supreme Court noted that the attorney's misconduct reflected only an error in judgment based, in part, on the represented party's inaccurate assertion that he was not represented by counsel. In addition, the attorney had no prior record of discipline in approximately 13 years of practice.

While the facts and circumstances are a little more egregious, the present matter involves considerably more mitigation than *Abeles*. On balance, the court finds a level of discipline consistent with *Abeles* adequately accomplishes the purposes of attorney discipline.[11]

Accordingly, the court orders, as outlined below, that respondent receive a public reproval.

## VI. Recommendation

It is ordered that respondent Thomas Edward Frankovich is hereby publicly reproved. Pursuant to the provisions of rule 270(a) of the Rules of Procedure, the public reproval will be effective when this decision becomes final. Furthermore, pursuant to rule 9.19 of the California Rules of Court and rule 271 of the Rules of Procedure, the court finds that the interests of respondent and the protection of the public will be served by the following specified conditions being attached to the public reproval imposed in this matter. Failure to comply with any conditions attached to this reproval may constitute cause for a separate proceeding for willful breach of rule 1-110 of the Rules of Professional Conduct of the State Bar of California.

---

[11] The court acknowledges the fact that respondent was suspended for six months in the Central District, and finds that an additional period of actual suspension would be unduly punitive.

Respondent is hereby ordered to comply with the following conditions attached to his public reproval for a period of one year following the effective date of the public reproval imposed in this matter.

1. During the one-year period in which these conditions are in effect, respondent must comply with the provisions of the State Bar Act and the Rules of Professional Conduct;

2. Within thirty (30) days after the effective date of his public reproval, respondent must contact the Office of Probation and schedule a meeting with a probation deputy to discuss these conditions attached to his public reproval. Upon the direction of the Office of Probation, respondent must meet with a probation deputy either in-person or by telephone. During the one-year period in which these conditions are in effect, respondent must promptly meet with probation deputies as directed and upon request.

3. Within ten (10) days of any change, respondent must report to the Membership Records Office of the State Bar, 180 Howard Street, San Francisco, California, 94105-1639, and to the Office of Probation, all changes of information, including current office address and telephone number, or if no office is maintained, the address to be used for State Bar purposes, as prescribed by section 6002.1 of the Business and Professions Code;

4. Respondent must submit written quarterly reports to the Office of Probation on each January 10, April 10, July 10 and October 10 of the period during which these conditions are in effect. Under penalty of perjury, respondent must state whether he has complied with the State Bar Act, the Rules of Professional Conduct and all conditions attached to his reproval within the preceding calendar quarter. If the first report will cover less than thirty (30) calendar days, that report must be submitted on the reporting date for the next calendar quarter and must cover the extended period. In addition to all quarterly reports, respondent must submit a final report, containing the same information required by the quarterly reports. The final report must be

- 17 -

submitted no earlier than twenty (20) days before the last day of the period during which these conditions are in effect and no later than the last day of that period;

5. Subject to the assertion of applicable privileges, respondent must answer fully, promptly and truthfully, all inquiries of the Office of Probation which are directed to him personally or in writing relating to whether respondent is complying or has complied with the conditions attached to this reproval; and

6. Within one year of the effective date of this public reproval, respondent must provide to the Office of Probation satisfactory proof of attendance at a session of the State Bar Ethics School, given periodically by the State Bar at either 180 Howard Street, San Francisco, California, 94105-1639, or 1149 South Hill Street, Los Angeles, California, 90015, and passage of the test given at the end of the session. Arrangements to attend Ethics School must be made in advance by calling (213) 765-1287, and paying the required fee. This requirement is separate from any Minimum Continuing Legal Education (MCLE) requirement, and respondent will not receive MCLE credit for attending Ethics School (Rules Proc. of State Bar, rule 3201.).

It is further ordered that respondent take and pass the Multistate Professional Responsibility Examination (MPRE) administered by the National Conference of Bar Examiners, MPRE Application Department, P.O. Box 4001, Iowa City, Iowa, 52243, (telephone 319-337-1287) and provide proof of passage to the Office of Probation, within one year after the effective date of the public reproval imposed in this matter. Failure to pass the MPRE within the specified time results in actual suspension by the Review Department, without further hearing, until passage. (But see Cal. Rules of Court, rule 9.10(b), and Rules Proc. of State Bar, rule 321(a)(1) and (3).)

## VII. Costs

The court orders that costs be awarded to the State Bar in accordance with Business and Professions Code section 6086.10 and are enforceable both as provided in Business and Professions Code section 6140.7 and as a money judgment.

IT IS SO ORDERED.

Dated: June 24, 2009

PAT McELROY
Judge of the State Bar Court

## CERTIFICATE OF SERVICE

[Rule 62(b), Rules Proc.; Code Civ. Proc., § 1013a(4)]

I am a Case Administrator of the State Bar Court of California. I am over the age of eighteen and not a party to the within proceeding. Pursuant to standard court practice, in the City and County of San Francisco, on June 25, 2009, I deposited a true copy of the following document(s):

### DECISION

in a sealed envelope for collection and mailing on that date as follows:

☒ by first-class mail, with postage thereon fully prepaid, through the United States Postal Service at San Francisco, California, addressed as follows:

| | |
|---|---|
| THOMAS EDWARD FRANKOVICH | STEVEN R. PINGEL |
| THOMAS E FRANKOVICH, APLC | LAW OFC STEVEN R PINGEL |
| 4328 REDWOOD HWY STE 300 | 444 W OCEAN BLVD STE 400 |
| SAN RAFAEL, CA 94903 | LONG BEACH, CA 90802 - 4527 |

☐ by certified mail, No.    , with return receipt requested, through the United States Postal Service at    , California, addressed as follows:

☐ by overnight mail at    , California, addressed as follows:

☐ by fax transmission, at fax number    . No error was reported by the fax machine that I used.

☐ By personal service by leaving the documents in a sealed envelope or package clearly labeled to identify the attorney being served with a receptionist or a person having charge of the attorney's office, addressed as follows:

☒ by interoffice mail through a facility regularly maintained by the State Bar of California addressed as follows:

Erica Dennings, Enforcement, San Francisco

I hereby certify that the foregoing is true and correct. Executed in San Francisco, California, on June 25, 2009.

George Hue

Case Administrator
State Bar Court